# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RYAN LOWELL BAILEY,

Defendant-Appellant.

FOR PUBLICATION
June 2, 2015
9:15 a.m.

No. 318479
Grand Traverse Circuit Court
LC No. 13-011601-FC

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

SHAPIRO, P.J.

Defendant was charged with engaging in digital-vaginal sexual penetration of three then-minors, MB, AB, BS. Defendant, who was born in 1982, was BS's uncle and MB and AB's great-uncle. He was charged with four counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1), and convicted of each following a jury trial. We affirm defendant's convictions against his arguments that they were not supported by sufficient evidence, that his due process rights were violated, that the trial court made erroneous evidentiary rulings, and that the trial was tainted by prosecutorial misconduct. However, we remand for resentencing.

AB and MB were sisters and defendant resided in their home for several years. MB, born in 1996, testified that defendant repeatedly engaged in digital-vaginal penetration of her as far back as she could remember, but that her first specific recollection of defendant digitally penetrating her occurred when she was seven years old. She testified that defendant continued this conduct until he moved out of the home in November 2008. As to MB, defendant was charged with, and convicted of, two counts of CSC I. As to Count I, but not Count II, defendant was charged with violating MCL 750.520b(1)(a) and (2)(b) (victim under age 13 and defendant over age 17), the provision that provides for a 25-year mandatory term of imprisonment, MCL 750.520b(2)(b). The jury was instructed that to convict on this offense, it had to find that defendant committed the crime between August 1, 2008 and November 2008 (the month in which MB testified that the assaults stopped). Count II did not provide for any specific date of offense other than a nearly seven-year period and was charged simply under MCL 750.520b(1)(a) (victim under age 13).

AB, born in 1994, testified that the first incident of digital-vaginal penetration occurred in the summer of 2003 and continued on a daily basis until she left for boarding school in the summer of 2008. As to AB, defendant was charged with, and convicted of, a single count of

-1-

CSC I, MCL 750.520b(1)(a) (victim under age 13). The date of the offense was listed as January 1, 2001 to November 30, 2008, with no particular date referenced. This was Count III of the felony information.

BS was a cousin of AB and MB. She testified that defendant digitally penetrated her vagina on one occasion in June 2007, during a visit. As to BS, defendant was charged with, and convicted of, a single count of CSC I, MCL 750.520b(1)(b)(*ii*) (victim between ages 13-16 and related by blood or affinity to defendant). This was Count IV of the information.

Defendant was convicted on all counts. As to Count I, the trial court sentenced him to the mandatory 25 to 50 years' imprisonment. As to each of the other counts, the court imposed terms of 225 months to 50 years. The trial court, stating that it was exercising its authority under MCL 750.520b(3), ordered that the sentence for Count I be served consecutive to the other three sentences, which were to be served concurrently with one another. In sum, defendant was sentenced to a combined minimum term of 43 years and 8 months, which would make him 79 years old at the time he is first eligible to be considered for parole.

## I. FACTS

MB described a history of physical contact with defendant going back as far as she could remember. She said that defendant used to kiss her on her lips, neck, and stomach—both over and under her clothes. She also said she used to lie down with him, usually in his bedroom. She said that most of the time she laid down with him, he would put his hands down her pants and into her vagina. According to MB, the incidents with defendant continued to occur regularly even after her sister, AB, left for boarding school in summer 2008, until defendant moved out in November 2008. MB said she did not tell anyone about defendant's abuse until her 16th birthday, when she told her boyfriend.

AB testified that the first sexual incident with defendant occurred during the summer of 2003, while staying overnight at a relative's house. She said that she and defendant wound up sleeping next to each other that night, that he came over to her, and put his hands down her pants and into her vagina. According to AB, the assaults continued after returning home and occurred daily until she left for boarding school in August 2008. She said it happened the same way every time but in different settings, including defendant's room at her house. AB said she knew what defendant was doing was wrong, but that she did not tell anyone because she was scared and did not want him to have to move out. AB said she wanted to go to boarding school to get away from defendant.

BS testified that defendant is her uncle and that MB and AB are her cousins. BS said that in June 2007, when she was aged 13, she stayed overnight at AB and MB's house. According to BS, in the morning, as she sat on defendant's lap while he used a computer, defendant put his fingers inside her vaginal opening. She also said that he thereafter took nude photographs of her with her legs spread apart. BS said she did not tell anyone about what defendant had done to her because it was "embarrassing" and "there is just things that you don't tell someone." She eventually told her boyfriend when she was aged 15 or 16 that she had been sexually assaulted, but did not initially identify defendant as the perpetrator.

The complainants first reported defendant's conduct to persons other than their boyfriends in April 2012. Each of the girls testified that they were unaware that defendant had been abusing the other two girls.

## II. ANALYSIS

### A. SUFFICIENCY OF EVIDENCE

Defendant argues that there was insufficient evidence to support his convictions. This Court reviews sufficiency of the evidence issues de novo. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, [appellate courts] review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (citation and quotation marks omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowak*, 462 Mich 392, 400; 614 NW2d 78 (2000). Notably, the prosecutor "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury 'in the face of whatever contradictory evidence the defendant may provide.' " *Id.*, quoting *People v Konrad*, 449 Mich 263, 273 n 6; 536 NW2d 517 (1995). Further, " '[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), quoting *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993).

Defendant correctly notes that there was no forensic evidence corroborating the victims' testimony; however, it has long been settled that a complainant's testimony regarding a defendant's commission of sexual acts is sufficient evidence to support a conviction for CSC I:

> [T]he question is not whether there was conflicting evidence, but rather whether there was evidence that the jury, sitting as the trier of fact, could choose to believe and, if it did so believe that evidence, that the evidence would justify convicting defendant. . . . If the jury chose to believe the victim's testimony, they would be justified in convicting defendant of four counts of criminal sexual conduct in the first degree. [*People v Smith*, 205 Mich App 69, 71; 517 NW2d 255 (1994).]

Defendant argues that the victims were not credible, pointing to the length of time each of them waited before reporting that defendant abused them and the lack of detail in their testimony. However, the jury heard cross-examination and argument in this regard and we will not "interfere with the jury's role" as sole judge of the facts. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended on other grounds 441 Mich 1201 (1992). As our Supreme Court explained in *People v Palmer*, 392 Mich 370, 376; 220 NW2d 393 (1974):

> Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony. Where sufficient evidence exists, which may be believed by the jury, to sustain a

verdict of guilty beyond a reasonable doubt, the decision of the jury should not be disturbed by an appellate court.

Each complainant testified that defendant penetrated her vagina with his fingers, and the jury was free to believe their testimony despite the delay in reporting defendant's conduct. Further, each victim offered an explanation for why they did not report defendant's conduct when it occurred. BS explained that it was embarrassing, MB explained that she was scared, and AB said she was terrified and did not want defendant to have to move out.

Defendant also argues that there was insufficient evidence that he unlawfully touched MB between August and November 2008, for purposes of finding him guilty of Count I, the only charge that carried a mandatory minimum sentence. However, MB testified that defendant touched her almost every day after AB went to boarding school until about two weeks before defendant moved away in November 2008. There was testimony that AB left for boarding school in late August 2008. And, the jury was properly instructed as to the time frame required to convict on this count. Accordingly, we reject this argument.

Finally, defendant argues that there was insufficient evidence to support his conviction under MCL 750.520b(1)(b) with respect to abusing BS because there was no evidence that he used a position of authority to coerce BS's submission. Contrary to defendant's assumption, however, it was not necessary for the jury to find that he used a position of authority to coerce BS's submission. Under MCL 750.520b(1)(b)(*ii*), the jury only needed to find that defendant was related to BS by blood or affinity within the fourth degree, and there was testimony of such a relationship.

Accordingly, defendant's convictions were supported by sufficient evidence.

## B. DUE PROCESS

Defendant argues that reversal is warranted because he was deprived of his constitutional right to due process. Defendant did not raise this argument below, so our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. An error is plain when it is clear or obvious. *Id.* at 763. An error affects substantial rights when it "could have been decisive of the outcome" of the case. *People v Grant*, 445 Mich 535, 547; 520 NW2d 123 (1994). Further, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Carines*, 460 Mich at 763-764 (quotation marks and citation omitted).

Defendant first argues that the felony information failed to give him adequate notice of the charges against him in Counts II-IV, because they alleged sexual misconduct over a period of eight years and because each count contained nearly identical broad allegations. "The Due Process Clause of the Fourteenth Amendment mandates that a state's method for charging a crime give a defendant fair notice of the charge against the defendant, to permit the defendant to adequately prepare a defense." *People v Chapo*, 283 Mich App 360, 364; 770 NW2d 68 (2009). Regarding an information's timeframe, MCL 767.45(1)(b) provides that an information "shall contain . . . [t]he time of the offense as near as may be," but that "[n]o variance as to time shall

-4-

be fatal unless time is of the essence of the offense." MCL 767.51 further provides "[t]hat the court may on motion require the prosecution to state the time or identify the occasion as nearly as the circumstances will permit, to enable the accused to meet the charge."

In *People v Naugle*, 152 Mich App 227, 233-234; 393 NW2d 592 (1986), this Court stated that the adequacy of an information's timeframe for a stated offense depends on certain factors, which include: "(1) the nature of the crime charged; (2) the victim's ability to specify a date; (3) the prosecutor's efforts to pinpoint a date; and (4) the prejudice to the defendant in preparing a defense." The Court further noted that "in *People v Howell*, 396 Mich 16, 27 n 13; 238 NW2d 148 (1976), the Supreme Court suggested that an imprecise time allegation would be acceptable for sexual offenses involving children, given their difficulty in recalling precise dates." *Naugle*, 152 Mich App at 234 n 1. Ultimately, the Court held that the information at issue provided adequate notice of three instances of sexual assault, even though it only stated that the assaults occurred in 1984, because "[t]he victim was 13 years old at the time of the alleged offenses" and "testified that the defendant had been molesting her since she was approximately eight years old," such that it was "conceivable that specific dates would not stick out in her mind." *Id.* at 235.

Here, MB and AB were 13 years old or younger at the time of the alleged offenses and each testified that defendant abused them numerous times over multiple years, such that specific dates would not stick out in their minds. BS was able to specify that the single assault against her occurred in June 2007. Further, to the extent defendant complains that the lack of specificity deprived him of his opportunity to present an alibi defense, the *Naugle* Court specifically rejected this argument on the basis that it would "give rise to an untenable tactic," in which "[a] defendant would simply have to make the assertion of alibi in order to escape prosecution once it became apparent that a child was confused with respect to the date of a sexual assault." *Id.* at 234. As in *Naugle*, because defendant was living with his victims over an extended period of time and the victims alleged that defendant abused them at times when no one else was around, "it appears that creating a valid alibi defense was not a realistic option." *Id.* at 235. Accordingly, the trial court did not err in not requiring greater specificity as to the information's timeframe for the charged offenses.

Regarding the information's description of the charges, MCL 767.45(1)(a) provides that an information "shall contain . . . [t]he nature of the offense stated in language which will fairly apprise the accused and the court of the offense charged." Defendant complains that the information did not sufficiently state the nature of the offenses because each count contained nearly identical language accusing him of committing sexual misconduct at sometime over eight years. However, defendant fails to explain why the similarity of the allegations in each count gives rise to a violation of MCL 767.45(1)(a). Because the information alleged that defendant penetrated each victim's vagina with his fingers and provided a citation to each law that defendant violated, defendant was fairly apprised of the charged offenses in compliance with MCL 767.45(1)(a).

Next, defendant argues that the joinder of charges deprived him of due process. In support of his argument, however, defendant relies on this Court's decision in *People v Daughenbaugh*, 193 Mich App 506; 484 NW2d (1992), and cases preceding it. Our Supreme Court has explained that the analysis in *Daughenbaugh* was superseded by MCR 6.120, which

expressly permits the joinder of multiple offenses. *People v Williams*, 483 Mich 226, 238-239; 769 NW2d 605 (2009).

Moreover, MCR 6.120 provides that joinder of related offenses is appropriate where the offenses are based on "the same conduct or transaction," "a series of connected acts," or "a series of acts constituting parts of a single scheme or plan," MCR 6.120(B)(1). Defendant asserts that the crimes were not of the same transaction, but does not argue that the trial court could not have properly concluded that his offenses constituted a series of connected acts or acts constituting parts of a single scheme or plan. Accordingly, defendant has failed to demonstrate that the trial court abused its discretion in joining his offenses into one trial.

Defendant also argues that the trial court erred in failing to instruct the jury that it needed to convict him on the basis of unanimous verdicts and reach a consensus about the facts supporting each verdict. No objection was raised in the trial court. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). As our Supreme Court stated in *People v Cooks*, 446 Mich 503, 512; 521 NW2d 275 (1994), "a specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense." (Emphasis in original.) "[W]here materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice." *Id.* at 513. Here, there was no risk that the jurors would be confused regarding their obligation to unanimously find that defendant sexually penetrated each victim. Further, each victim testified that defendant abused them in the same manner, i.e., digital-vaginal penetration. And similar to *Cooks*, "the evidence offered . . . to support each of the alleged acts of penetration was materially identical, i.e., the complainant's equivocal testimony of . . . penetration, occurring in the same house over an unspecified . . . period." *Id.* at 528. Accordingly, "[b]ecause neither party presented materially distinct proofs regarding any of the alleged acts, the factual basis for the specific unanimity instruction . . . was nonexistent." *Id.* at 528-529.

## C. EVIDENTIARY RULINGS

Defendant argues that reversal is warranted because the trial court erred in admitting other-acts evidence. Because defendant did not preserve the issue below, we review it for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

Defendant first complains that the trial court improperly admitted evidence pursuant to MCL 768.27a and MRE 404(b). He does not identify to what evidence he objects, instead pointing to the prosecutor's closing argument, in which the prosecutor told the jury that it was permitted to consider defendant's uncharged acts of criminal sexual behavior, including his initial penetration of AB in another county and the sexual pictures he took of BS, in order to "put everything in context" and help evaluate their credibility.

We do not find plain error. MCL 768.27a provides, in part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." And, MRE 404(b) provides that such evidence may be admitted for "proof of . . . scheme, plan, or system of doing an act." MRE 404(b). See *People v Sabin*, 463 Mich 43, 66-67; 614 NW2d 888 (2000).

-6-

Defendant also argues that if evidence of his uncharged sexual misconduct was relevant, its relevance was substantially outweighed by the danger of unfair prejudice such that it should have been excluded under MRE 403 because it was only relevant to propensity and propensity evidence may not be considered. We reject this argument for two reasons. First, the probative value of the evidence was not limited to propensity as it also defined a plan or system in the commission of the various crimes. Second, under *People v Watkins*, 491 Mich 450, 486-490; 818 NW2d 296 (2012), propensity evidence admitted under MCL 768.27a is considered to have probative value and so be relevant. Accordingly, defendant has failed to show that the trial court plainly erred in making the challenged evidentiary rulings.

## D. PROSECUTORIAL MISCONDUCT

Next, defendant argues that several incidents of prosecutorial misconduct warrant reversal. This issue is also unpreserved, necessitating review for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

Defendant argues that the prosecutor denied him a fair trial by: (1) asking improper questions of prospective jurors during the voir dire, including why victims might not report sexual abuse; (2) referencing their answers during closing arguments; (3) stating that childhood should be carefree; (4) asking the victims how they felt while testifying at trial; (5) asking the victims how they had been affected by defendant's abuse; (6) asking the jurors to consider defendant's uncharged acts of sexual misconduct; (7) arguing that the victims' testimony could not be made up; and (8) arguing that in order to find defendant not guilty, the jury would have to find that the victims were mistaken or lying. However, this Court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect," *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003), and defendant offers no explanation for why a curative instruction would not have alleviated any prejudicial effects of the alleged instances of misconduct. As this Court has made clear, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citations and quotation marks omitted).

In any event, defendant has failed to show prosecutorial misconduct affecting his substantial rights. "Prosecutors are . . . generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* at 236. As to defendant's claim that the prosecutor argued that sexual assault victims may not report abuse right away, juries are permitted to view evidence in light of their common knowledge or experience. *People v Schmidt*, 196 Mich App 104, 108; 492 NW2d 509 (1992). And, to the extent defendant complains that the prosecutor elicited irrelevant and prejudicial testimony from witnesses, defendant offers no authority suggesting that the trial court's admission of irrelevant evidence constitutes prosecutorial misconduct. Further, asking witnesses about how they are feeling while testifying can be relevant to their credibility. MRE 401; MRE 607. Although the prosecutor arguably invoked improper sympathy for the victims by stating that childhood should be carefree, and arguably misstated the law in stating that the jury would have to find that the victims were lying or mistaken to acquit defendant, defendant nevertheless fails to explain how these or the other alleged errors resulted in his conviction despite his actual innocence or that

they seriously affected the fairness, integrity, or public reputation of proceedings independent of his innocence. *Carines*, 460 Mich at 763-764.

Accordingly, defendant is not entitled relief on his claims of prosecutorial misconduct.

### E. SENTENCING

Defendant claims that the trial court erred in ordering that his mandatory minimum sentence under Count I be served consecutive to his concurrent sentences under Counts II, III, and IV. Defendant argues that the trial court did not set forth sufficient grounds to justify a discretionary imposition of consecutive sentences. We do not reach the issue of whether the trial court abused its discretion, nor whether it set forth sufficient grounds to impose a consecutive sentence, because we conclude that the trial court did not possess the discretion to impose a consecutive sentence.

"In Michigan, concurrent sentencing is the norm, and a consecutive sentence may be imposed only if specifically authorized by statute." *People v Ryan*, 295 Mich App 388, 401; 819 NW2d 55 (2012) (quotation marks and citation omitted). However, MCL 750.520b(3) provides that where defendant is convicted of a charge of CSC I, the trial court "may order [that the] term of imprisonment imposed under this section to be served consecutively to any term of imprisonment imposed for any other criminal offense arising from the same transaction."

The statutory language clearly limits this authority to cases where the multiple offenses arose from the "same transaction," and the relevant caselaw is consistent with that legislative determination. In *Ryan*, 295 Mich App at 393, we held that two acts of CSC I occurred in "the same transaction" where, while the victim's stepmother was at a wedding, the defendant (the victim's father), "called [her] into his bedroom, demanded that she remove her clothing . . . put his penis in her vagina and thereafter placed his penis in her mouth, leading to ejaculation." In *People v Brown*, 495 Mich 962, 963; 843 NW2d 743 (2014), the Supreme Court vacated the trial court's order that defendant serve each of his seven sentences for CSC I consecutively, directing that only three of the sentences could be imposed consecutively as arising from the "same transaction." In *Brown*, the defendant was charged with, and convicted of, seven counts of CSC I against his granddaughter and the trial court imposed a consecutive sentence for each one. See *People v Brown*, unpublished opinion per curiam of the Court of Appeals, issued July 30, 2013 (Docket No. 308510), pp 3, 6, rev'd 495 Mich 963 (2014). The Supreme Court reversed, stating that it had reviewed the record and that "at most" only three of the seven sentences could be imposed consecutively. *Brown*, 495 Mich at 962-963. While we do not have access to the trial court record in that case, the prosecution's brief to this Court reviewed a total of seven criminal penetrations perpetrated by the defendant, against the same victim, over approximately 10 days during three separate incidents. Three of the penetrations occurred in the course of a single ongoing assault, thus allowing for the sentences for the second and third penetrations of that transaction to each be imposed consecutively to the first, and to each other. During a separate transaction, two penetrations occurred, allowing for the second to be imposed consecutively to the first. In that seven-assault case, therefore, three sentences could each be imposed consecutively to the four concurrent sentences and to each other. While we cannot be certain that this was the basis for the Supreme Court's decision, we can be certain that the Court concluded that four of the penetrations within that 10-day period were not part of the "same

transaction," even though they were close in time and demonstrated ongoing child sexual abuse of the same victim. It is also consistent with *Ryan*'s reliance on *People v Nutt*, 469 Mich 565, 578 n 15; 677 NW2d 1 (2004) (quotation marks and citation omitted), for the principle that "[i]t is not an unfrequent occurrence, that the same individual, at the same time, and in the same transaction, commits two or more distinct crimes . . . ."

In sum, we hold that an ongoing course of sexually abusive conduct involving episodes of assault does not in and of itself render the crimes part of the same transaction. For multiple penetrations to be considered as part of the same transaction, they must be part of a "continuous time sequence[,]" not merely part of a continuous course of conduct. *Brown*, 495 Mich at 963; *Ryan*, 295 Mich App at 402-403.[1]

In the instant case, Count I alleged that defendant committed CSC I against MB between August 1, 2008 and November 2008. Although a brief time overlap exists, there is no evidence that defendant's commission of Count I occurred on the same transaction as the offense against AB (Count III), who left for boarding school in August 2008. Count I clearly did not occur during the same transaction as the offense against BS (Count IV), who testified to a single occurrence in the summer of 2007. While the jury convicted defendant of another count of CSC I of MB (Count II) in an approximately seven-year time period, there is no evidence in the record that MB was subject to several distinct acts of penetration sufficient to constitute the same transaction or that Count II was committed in the same transaction as Counts III and/or IV. Accordingly, we conclude that the trial court did not possess the statutory authority to impose consecutive sentences and that doing so was plain error.[2] We vacate defendant's sentence on

---

[1] We respectfully reject our dissenting colleague's straw man characterizations of our analysis and our conclusion regarding this issue. In addition, the dissent's reliance on *People v Jackson*, 153 Mich App 38; 394 NW2d 480 (1986), is puzzling. By its own terms, that decision concerned the "sole issue" of whether the trial court erred in dismissing a criminal charge on double jeopardy grounds. *Id.* at 40. It contains no discussion of sentencing, consecutive or otherwise. And, rather than referring us to any holding of that case, the dissent cites to three full pages in *Jackson*, leaving us unable to ascertain what point the dissent wants us to consider. The only words actually quoted from *Jackson* by the dissent are the phrase "continuous time sequence," a term which we have explicitly adopted in this opinion and which the dissent appears to misconstrue to mean not "continuous," but "repeated." Finally, the dissent's reliance on rhetorical flourishes such as "profoundly misconstrues," "utterly wrong," "irrational and counterproductive," "completely arbitrary," and "nonsensical" provide us with little content warranting response.

[2] We agree with the dissent that a lengthy term of imprisonment is proper in this case. Indeed, pursuant to MCL 750.520b(2)(b), defendant must be sentenced to a minimum terms of no less than 25 years and the trial judge has the authority to sentence him to longer minimum terms, MCL 750.520b(2)(a). These minimum terms are imposed with no possibility of a reduction due to "good time" nor any other time credits. Moreover, the trial court may also impose a maximum term of any length (and has already imposed a 50-year maximum in this case), which defendant must serve unless the Michigan Department of Corrections determines that it is proper

Count I and remand for resentencing on that count to a term of years that shall be served concurrently to his other sentences.

## F. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that reversal is warranted because he received ineffective assistance of counsel during the trial proceedings.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20 and US Const, Am VI. To establish ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*. See also *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. See also *Strickland*, 466 US at 690-691. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Defendant argues that his trial counsel was ineffective in failing to request that his charges be tried separately, failing to object to other-acts evidence under MRE 404(b), failing to request a unanimity instruction, and failing to argue that the law did not provide that the trial court could sentence defendant consecutively.

For the reasons discussed, defendant has failed to show that any of these objections or requests would have been successful. The joinder of claims is permissible under MCR 6.120; the other-acts evidence was admissible; and "a specific unanimity instruction is not required" where, as in this case, "materially identical evidence is presented with respect to each act, and there is no juror confusion," *Cooks*, 446 Mich at 512-513. As this Court has explained, "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201.

Moreover, defendant does not argue that there is a reasonable probability that the outcome of his trial would have been different had his trial counsel acted in accordance with defendant's wishes on appeal. Each victim testified that defendant committed CSC I against them by penetrating their vagina with his fingers when they were under the age of 13 or between

to release him before its expiration. Finally, the trial court may impose even longer concurrent sentences where it specifies grounds for doing so. The issue in this case is not whether defendant is entitled to leniency. He is neither entitled to it, nor, given the mandatory minimum sentence under the statute, eligible for it. He is, however, entitled, as are all defendants, to be sentenced in accordance with the law rather than by an unfettered exercise of our personal outrage as to his crimes.

the ages of 13 and 16.  Assuming the jury believed their testimony, there is little likelihood that the outcome would have been different had the charges been tried separately, or trial counsel asserted the objections raised by defendant on appeal.

By contrast, defense counsel's failure to challenge the conclusion that defendant was subject to consecutive sentencing likely constituted ineffective assistance.  However, since we remand the case for resentencing, we need not address trial counsel's performance in this regard.

Defendant's convictions are affirmed.  We remand for resentencing on Count I only, consistent with this opinion.  We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher