*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAI VILLALOBOS,

Defendant-Appellant.

UNPUBLISHED
October 15, 2020

No. 349356
Cass Circuit Court
LC No. 18-010395-FH

Before: MURRAY, C.J., and CAVANAGH and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and possession of a controlled substance analogue, MCL 333.7403(2)(b)(*ii*). Defendant was sentenced as a fourth habitual offender, MCL 769.12, to 300 days' jail for the possession of methamphetamine conviction, and 180 days' jail for the possession of analogues conviction. We affirm.

## I. STATEMENT OF THE FACTS

This case arises from a parole compliance check at defendant's residence in Dowagiac. Defendant's mother allowed a Michigan Department of Corrections (MDOC) agent and a Cass County Drug Enforcement Team detective to perform this parole compliance check in defendant's bedroom because defendant was not home at the time. The search of the bedroom yielded two baggies from inside a garbage bag and a short straw which was suspected to be used for drug consumption.

The items were collected and sent to the forensics lab, where the straw tested positive for methamphetamine and buprenorphine. Defendant then reported to his parole supervisor, and admitted that he knew the straw was in the garbage bag, but claimed that it belonged to a woman named Stephanie, and that he had relapsed and had used methamphetamine. Defendant was found guilty at his jury trial of both charges of possession.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court erred when it allowed testimony explaining the defendant's status as a parolee into evidence, and that his counsel's failure to object to this testimony deprived him of his right to due process.

Unless raised by a motion for a new trial or an evidentiary hearing, a review for a claim of ineffective counsel is limited to errors apparent on the record. *People v Norfleet*, 317 Mich App 649, 658; 897 NW2d 195 (2016). Because defendant did not file a motion for new trial or an evidentiary hearing, this issue is not preserved, and review is limited to errors apparent on the record. *Id*. A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The factual findings related to ineffective assistance of counsel are reviewed for clear error, and questions related to constitutional law are reviewed de novo. *Id*.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). When Agent Sharon Underwood testified at trial regarding what parole is, defense counsel objected to this line of questioning, arguing that it was "getting dangerously close to some improper [MRE] 404(b) character evidence issues," and the objection was sustained. Therefore, to the extent that defendant argues that the admission of this evidence was in error, this issue is preserved for appeal. *Id*. The trial court's decision regarding the admissibility of evidence is reviewed for an abuse of discretion. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). "An abuse of discretion occurs when [the] trial court's decision is outside the range of principled outcomes." *Id*.

In order to prevail on a claim of ineffective assistance, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994). Guidelines for assessing counsel's performance were provided in *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984):

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional conduct. The court must determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

In effect, this creates a two-pronged test that the appellant must satisfy: the defendant must demonstrate that (1) the trial counsel's representation fell outside an objective standard of reasonableness; and (2) that without counsel's error, a reasonable probability exists that the proceeding would have resulted differently. *People v Lopez*, 305 Mich App 686, 694; 854 NW2d 205 (2014). Finally, to prevail on a claim of ineffective assistance of counsel, the defendant must "overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011).

Defendant's claim for ineffective counsel is based on the argument that the Michigan Rules of Evidence prohibit testimony of a defendant's prior criminal acts. Specifically, MRE 404(b)(1) states that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Because MRE 404(b)(1) does allow evidence of other crimes in some situations, the court must determine when this type of evidence may be admissible. The Michigan Supreme Court in *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), set out a four-step analysis for determining when to allow evidence of a defendant's prior convictions:

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b). Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [(Citations omitted.)]

In order to assess trial counsel's competency in representation, the Court must first determine whether counsel should have objected to the evidence in controversy.

First, defendant argues that the evidence offered by the prosecution supporting defendant's status as a parolee "served no other purpose than to inflame the jury." While explaining defendant's parole status had informed the jury of defendant's prior conviction, the prosecution offered this evidence to explain why the compliance officers had access to defendant's room, and how they were able to collect the residue-covered items.

Second, MRE 402 requires that all evidence must be relevant. Again, the testimonial evidence that defendant was on parole is relevant because it explains how the officers acted within their legal right to enter defendant's residence and search in his room. Further, the parole status evidence also explains why the search in question occurred in the first place, and why defendant tested positive for methamphetamine: to fulfill the requirements of defendant's parole.

Third, while the evidence of defendant's parole status may have prejudiced the jury, its probative value greatly outweighed any unfair prejudice as required by MRE 403. MRE 403 prohibits evidence that will create a "danger of unfair prejudice," but the prejudice risked in the case at hand is not "unfair." Here, the evidence was required to explain the impetus for the search and subsequent trial, and there is no evidence that the prosecution offered this evidence for any other reason than to provide this explanation. The testimony did not explore defendant's prior conviction, but rather, provided a legally-supported reason for the search and subsequent charges to be made.

The trial court did not abuse its discretion in admitting the evidence of defendant's parole status, and trial counsel therefore did not have any reason to further object to the testimony. Because there is no indication that the evidence in question was inadmissible, any objection to its admission would have been futile. In assessing the trial counsel's representation, "[c]ounsel is not required to raise meritless or futile objections," so trial counsel's representation was not ineffective. *People v Moorer*, 262 Mich App 64, 76; 683 NW2d 736 (2004).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the amount of drug residue obtained from the straw was insufficient to support a conviction of possession of controlled substances under MCL 333.7403.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). The test to determine the sufficiency of evidence in a criminal case is whether the evidence, viewed in a light most favorable to the prosecution, would allow a reasonable jury to find guilt beyond a reasonable doubt. *People v Nowack,* 462 Mich 392, 399; 614 NW2d 78 (2000). In this review, the Court must draw all reasonable inferences and make credibility decisions that reflect the jury's decision. *Id.* at 399-400.

The evidence provided at trial was sufficient to support a conviction of possession of a controlled substance. The trial testimony does not support defendant's argument that the residue found on the straw was invisible to the naked eye; rather, it supports the inference that defendant had at least constructive possession of the controlled substance.

When assessing the evidence, the Court will determine whether the evidence is sufficient to support a conviction by proving the essential elements of the crimes. *People v Reese,* 491 Mich 127, 139; 815 NW2d 85 (2012). MCL 333.7403(1) provides:

> A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

Accordingly, we must determine whether the challenged evidence is sufficient to prove that defendant knowingly or intentionally possessed methamphetamine and buprenorphine.

Defendant relies on the *Hunten* Court's decision that provided that the requisite scienter for possession of controlled substances cannot be established solely by evidence of the substance that is not visible to the naked eye. *People v Hunten,* 115 Mich App 167, 171; 320 NW2d 68 (1982). In *Hunten*, a needle, syringe, and small pipe were found in the defendant's cell at a correctional facility, which was subsequently drug tested and determined to have a residue of a controlled substance. *Id.* at 168. Testimony at trial revealed that the residue on the syringe was invisible to the naked eye, and on appeal, this Court held that the scienter for possession of a controlled substance could not be proven solely by presence of a minute quantity of a controlled substance that is invisible to the naked eye. *Id.* at 171.

-4-

The case at hand is distinguishable from *Hunten* in two ways. First, the trial testimony shows that the residue on the straw *was* visible to the naked eye. Agent Underwood testified that she "saw the straw" and that "[t]here was some residue in it where Detective [Beth] Davis put it in the bag to be sent to a lab." Detective Davis also testified that she could see the residue on the straw, describing it as a "kind of powdery, sugary, crystal-like residue inside the straw and around the edge." Further, forensic scientist William Ruhf testified that he "received a section of plastic straw that I could see the residue on the inside of that." Defendant relies on the fact that Ruhf needed his prescription glasses to see the residue, as Ruhf admitted that his "naked eyes would not work . . . ." But Ruhf's reliance on his prescription glasses does not preclude his testimony that the reside was visible, and both Agent Underwood and Detective Davis were also able to see the residue with their naked eye.

Second, defendant's conviction did not rest on the residue evidence alone. Defendant also admitted that he had relapsed, tested positive for methamphetamine, and that he knew that the straw was in his room. Parole Agent Amanda Osborn's testimony revealed that defendant "did admit that he had a relapse; . . . he relapsed the weekend right before he came in to report and was positive for methamphetamine." Not only did defendant admit to relapsing and test positive for methamphetamine, Agent Osborn testified that defendant claimed the straw and baggies belonged to a female named Stephanie, and that defendant "knew that she had those belongings in his room."

The Michigan Supreme Court has held that a defendant can be guilty of possession of a controlled substance when they have either actual or constructive possession of a controlled substance. *People v Wolfe*, 440 Mich 508, 519-520; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Accordingly, the Court held that "possession may be found even when the defendant is not the owner of recovered narcotics." *Id.* at 520. When determining whether a defendant has constructive possession of a controlled substance, the Court will consider whether the totality of the circumstances show a sufficient nexus between the defendant and the controlled substance. *Id.* at 521. The *Wolfe* Court, quoting *United States v Disla*, 805 F2d 1340, 1350 (CA 9, 1986), provided:

> "We have stated that constructive possession may be demonstrated by direct or circumstantial evidence that the defendant had the power to dispose of the drug, or 'the ability to produce the drug . . . ,' or that the defendant had the 'exclusive control or dominion over property on which narcotics are found . . . .' Constructive possession may also be proven by the defendant's participation in a 'joint venture' to possess a controlled substance. The ultimate question is whether, viewing the evidence in a light most favorable to the government, the evidence establishes a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance." [*Wolfe*, 440 Mich at 521-522.]

Here, defendant's knowledge of the controlled substance-containing straw in his bedroom provides support for the requisite connection between him and the controlled substance, which also supports the inference that defendant exercised control and dominion over the substance. See *id*. Defendant's knowledge of the controlled substance-covered straw's presence in his bedroom supports the inference that he had dominion and control over it. See *id*. Additionally, defendant's claim that the straw did not belong to him does not cut against the above inference, as the *Disla*

Court held that "joint venture" to possess a controlled substance is still evidence of constructive possession. *Id.* Ultimately, there is sufficient evidence to support an inference that defendant had at least constructive possession of the controlled substance. Together, these additional pieces of evidence could lead a reasonable jury to convict defendant of possession of a controlled substance. MCL 333.7403. This de novo review reveals that the residue *was* visible to the naked eye, and that the conviction was supported by evidence such that a reasonable jury could find defendant guilty.

Affirmed.

/s/ Christopher M. Murray
/s/ Mark J. Cavanagh
/s/ Thomas C. Cameron