*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER MILOSH DIVICH,

Defendant-Appellant.

UNPUBLISHED
March 3, 2022

No. 356130
Missaukee Circuit Court
LC No. 2019-003059-FH

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Defendant Christopher Milosh Divich appeals his jury-trial conviction of resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 133 days in the county jail. We affirm.

## I. BACKGROUND

In the early morning hours of September 28, 2019, defendant and his girlfriend Courtney Webster got into an argument at defendant's residence. Webster called 911, but did not communicate directly with the dispatcher. The 911 dispatcher heard defendant and Webster "arguing" and Webster saying "get off of [me]." At 1:11 a.m., Deputy Kevin Vorpagel and Deputy Austin Booms were dispatched to defendant's residence to investigate. As they approached the residence on foot, Deputy Vorpagel heard defendant and Webster "screaming and yelling." Deputy Booms noted that Webster sounded like she was "distressed." Deputy Vorpagel and Deputy Booms "began [loudly] pounding on the side of the residence," announced that they were police officers, and told defendant "to exit the residence." Defendant did not comply. Although "the screaming . . . stopped," the 911 dispatcher noted that Webster was crying. Deputy Vorpagel also heard dogs barking inside the residence. Deputy Vorpagel and Deputy Booms continued to knock on the exterior of the residence, which had aluminum siding, and on the doors.

After they did not get a response, Deputy Vorpagel and Deputy Booms pulled their patrol vehicles up to the residence, turned on their "overhead lights," and began making "announcements" on loudspeakers. Deputy Vorpagel and Deputy Booms instructed defendant and

Webster to exit the residence or to come to a window so that they could verify that "everybody was okay." Defendant was informed that, if he and Webster did not exit the home, law enforcement would "seek[] a Search Warrant" and that law enforcement "would eventually have to force entry into th[e] residence[.]" Defendant and Webster did not comply despite Deputy Vorpagel and Deputy Booms making "commands" and "announcements" over the loudspeakers for "over an hour. . . ." At some point, it was discovered that defendant had a warrant for his arrest in relation to a charge for misdemeanor assault.

At 3:05 a.m., a search warrant was obtained "to check the well-being of the subjects inside the residence," and the Northern Michigan Mutual Aid Emergency Response Team was contacted "to help assist in carrying out the Search Warrant and Arrest Warrant." After the team arrived, a member of law enforcement announced over the speaker that they had a warrant for defendant's arrest, that law enforcement had obtained a search warrant, and that "property damage would occur" if defendant "did not exit the residence. . . ." This announcement was first made 6:14 a.m., and it was repeated "every couple [of] minutes" for about 45 minutes. Eventually, members of the team, including Sergeant Nicholas Bertram, approached one of defendant's windows. One of the members of the team broke the window. "Shortly after the window was broken," defendant "appeared in the window and began shouting. . . ." Sergeant Bertram and other members of law enforcement "shout[ed]" at defendant to "come out and surrender." Defendant "retreated back into the house for a moment" and then returned to the window, at which point Sergeant Bertram pepper sprayed defendant.[1] Defendant was again instructed to leave the residence, and he complied. Defendant was arrested.[2]

In October 2020, trial commenced. Webster testified that she had "accidentally" called 911 on September 28, 2019, and she denied that defendant had assaulted her. Webster and defendant both denied hearing the announcements that defendant was required to exit the residence, and defendant denied knowing that there was a warrant for his arrest at any relevant time. Defendant was convicted of resisting or obstructing a police officer with respect to Sergeant Bertram and was sentenced as described above. This appeal followed.

## II. ANALYSIS

Defendant argues that the prosecutor did not present sufficient evidence to support his conviction because the prosecutor failed to establish that defendant knowingly failed to comply with a lawful command or that defendant knew or had reason to know that Sergeant Bertram was performing his duties. We disagree.

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we

---

[1] Sergeant Bertram testified that defendant was "[a]gitated" and "[a]ngry" and that he had been informed by other members of law enforcement that defendant had access to a firearm.

[2] Defendant was charged with three counts of resisting or obstructing a police officer. The counts concerning Deputy Vorpagel and Deputy Booms were dismissed before trial.

review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Smith*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 349900); slip op at 3 (quotation marks and citation omitted).

In order to convict a defendant of resisting or obstructing a police officer, the prosecutor must establish that

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. [*People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014) (quotation marks and citation omitted).]

" 'Obstruct' includes . . . a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). The prosecutor also must prove that the conduct of the officer from which the defendant's resistance or obstruction arose was lawful. *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624 (2012). See also *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014) ("the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d").

We conclude that there was sufficient evidence for a rational trier of fact to find that defendant heard the officers' announcements that they had a warrant for defendant's arrest. Indeed, members of law enforcement announced multiple times over loudspeakers that they had a warrant for defendant's arrest and that defendant was required to exit the home. These announcements were made over the course of 45 minutes, and Sergeant Bertram testified that the speaker system was "[v]ery loud." In addition, when Sergeant Bertram and the other officers were standing outside defendant's broken window, Sergeant Bertram "shout[ed]" at defendant to exit the home and "surrender." Given the number of announcements, a rational trier of fact could reasonably infer that defendant had heard these repeated announcements and that defendant knew or had reason to know that Sergeant Bertram was performing a lawful duty, i.e., executing an arrest warrant.[3] Although defendant argues that he only "momentarily" "disappeared" from the window, "the duration of the resistance . . . is of no import, as resistance can occur in even the briefest of

---

[3] To the extent that defendant argues that the jury simply should not have believed the prosecutor's version of the events in this case, this Court resolves all conflicts of the evidence in favor of the prosecution when the sufficiency of the evidence is challenged. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). We also do not second-guess jury determinations regarding the weight of the evidence or the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

moments . . . ." *People v Morris*, 314 Mich App 399, 414-415; 886 NW2d 910 (2016). Accordingly, the evidence presented at trial was sufficient to establish beyond a reasonable doubt that defendant committed the crime of assaulting, resisting, or obstructing a police officer.

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

-4-